```
E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorney
Chief, General Crimes Section
HAOXIAOHAN CAI (Cal. Bar No. 331131)
Assistant United States Attorney
Major Frauds Section
     1200/1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:     (213) 894-3667/0762
     Facsimile:     (213) 894-0141
     E-mail:        Ian.Yanniello@usdoj.gov
                    Haoxiaohan.Cai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-236(A)-SPG-1 |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S BRIEF IN SUPPORT OF PRETRIAL DETENTION FOR DEFENDANT JASVEEN SANGHA; EXHIBIT A</u> |
| v. | |
| JASVEEN SANGHA,<br>  aka "the Ketamine Queen," | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United Attorneys Ian V. Yanniello and Haoxiaohan Cai hereby files its brief in support of detaining defendant Jasveen SANGHA based on risk of nonappearance and defendant SANGHA's significant danger to the community if she remains on bond.

This filing is based upon the attached memorandum of points and authorities, the attached Exhibit A, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 15, 2024          Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                MACK E. JENKINS
                                Assistant United States Attorney
                                Chief, Criminal Division

                                   */s/ Haoxiaohan Cai*

                                IAN V. YANNIELLO
                                HAOXIAOHAN CAI
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This morning, the government unsealed the First Superseding Indictment ("FSI"), which alleges that defendant SANGHA --- known to her customers as the "Ketamine Queen" --- engaged in a half-decade long drug business selling methamphetamine, ketamine, and other drugs to countless drug buyers. The FSI alleges that defendant is linked to at least two drug overdose deaths and, given the volume of drugs defendant sold, there are likely more victims. In August 2019, defendant distributed ketamine to Victim C.M., who died of a drug overdose within a day. In October 2023, defendant worked with co-conspirators to sell ketamine to Victim M.P., which resulted in M.P.'s overdose death on October 28, 2023. To cover up her criminal activity, defendant took steps to obstruct justice, including instructing a co-conspirator to delete text messages.

Two deaths did not deter defendant. To the contrary, when law enforcement executed a search warrant at her residence months after Victim M.P.'s death, in March 2024, agents seized multiple pounds of methamphetamine pills, 79 vials of ketamine, fraudulently obtained pharmaceutical pills and other illegal drugs.

On March 21, 2024, defendant was released on a $100,000 bond after an initial appearance on a complaint alleging defendant's March 2024 conduct -- that she possessed with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

After additional investigation uncovered the full scope of defendant's drug trafficking, a federal grand jury returned a First Superseding Indictment ("FSI") charging her with ten felony counts,

including maintaining a drug involved premises and distribution of ketamine resulting in death.

In light of the FSI and new material information, the government requests the Court reopen detention hearings, vacate defendant's bond order and order that defendant be detained pending trial.

## II. BACKGROUND

### A. The Complaint Is Filed After Executing a Search Warrant At Defendant's Residence

On March 19, 2023, investigators executed a federal search warrant at defendant's apartment in North Hollywood, California (the "SANGHA Stash House"). (Dkt. 1.) Upon executing the warrant, agents found a significant quantity of illegal drugs, including approximately 3 pounds of counterfeit pills containing methamphetamine, 79 vials of ketamine,[1] ketamine powder, 2,127 grams of Xanax pills, psilocybin mushrooms, and cocaine. (Dkt. 1 at 5, 7.) At the time, defendant also possessed drug trafficking tools, such as a money counter, a scale covered in drug residue, a signal and hidden camera detector, and other drug paraphernalia, a drug ledger, and a firearm registered to defendant's boyfriend. (Id. at 5.)

At the time of her initial appearance, agents had only done a preliminary review of defendant's phones and the true scope of her dealing was unknown. That review showed numerous threads with customers on an encrypted messaging application, Signal where she discussed selling drugs. (Id. at 7.) Defendant saved videos recording herself "cooking" liquid ketamine on a stove top to convert

---

[1] As alleged in the FSI, co-conspirator Fleming was charging $180 per vial for defendant's ketamine, meaning that the 79 vials alone were worth approximately $14,220.

it to powder form. (Id. at 8.) And she had Signal conversations with a ketamine buyer discussing shipping vials of ketamine, where defendant sent photos of the ketamine packaging and a photo of the shipping receipt, on March 18, the day before search warrant execution, promising the buyer, "I think you'll like these but remember they're double strength." (Id. at 7.)

### B. The Initial Detention Hearing

Defendant made an initial appearance on the complaint on March 21, 2024. In connection with the case, the government initially filed a notice of request for detention. (Dkt. 3.) Because the government's investigation as to defendant's additional crimes was ongoing, and the only charge was the March 19th possession with intent to distribute methamphetamine, the government stipulated to pretrial release for defendant. The Honorable Jacqueline Chooljian, United States Magistrate Judge, ordered defendant released on a $100,000 bond signed by her mother, and other conditions. (Dkt. 4.)

### C. The Original Indictment

On April 9, 2024, a grand jury returned an indictment against defendant, charging her with distribution of ketamine on March 18, 2024, for shipment of ketamine via the mail, to a drug customer, one count of possession with intent to distribute methamphetamine and one count of possession with intent to distribute ketamine, for the drugs found at the SANGHA Stash House found on March 19, 2024. (Dkt. 14.)

### D. The Continued Investigation Revealed the Scope of Defendant's Drug Trafficking Activities, Including Her Connection to At Least Two Overdose Deaths

Yesterday, the grand jury returned a First Superseding Indictment that charges defendant with ten felony counts, including five counts of distribution of ketamine, including one count of

distribution resulting in death or serious bodily injury, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i), one count of conspiracy to distribute ketamine, in violation of 21 U.S.C. § 846, one count of possession with intent to distribute ketamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i), one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and one count of maintaining a drug involved premises --- i.e., the SANGHA Stash House, in violation of 21 U.S.C. § 856. The FSI outlines the following:

**Since at least 2019, defendant has operated a drug stash house and large-scale trafficking operation.** Although the government knew that defendant possessed drugs at her apartment in March 2024, it was only upon further review of defendant's phones that investigators learned the full extent of her drug dealing from that location. For at least five years prior to arrest, defendant used the SANGHA Stash House as a place where she sells, packages, and manufactures drugs -- since approximately June 2019, as alleged in Count Two of the FSI. Although she also sold methamphetamine and other drugs like magic mushrooms, defendant's specialty was ketamine, which she routinely sold, holding herself out as a celebrity drug dealer with high quality goods.

**Defendant dealt deadly ketamine to Victim M.P. and Has Been Charged with his Death.** The FSI alleges that defendant was the deadly source of ketamine that resulted in Victim M.P.'s death on October 28, 2023. Beginning in October 2023, defendant worked with co-conspirator Erik Fleming to sell vials of ketamine to Victim M.P. and co-conspirator Kenneth Iwamasa, Victim M.P.'s live in assistant. In hopes of cementing the first sale to Victim M.P., defendant told co-

conspirator Fleming to pass on the word that defendant's ketamine was "unmarked but it's amazing," referring to the fact that because the ketamine did not come from a legitimate source, the vials would not have any labels on the outside.  Defendant directed co-conspirator Fleming to drop off cash at the SANGHA Stash House, where she would then provide ketamine to co-conspirator Fleming for delivery. Defendant distributed ketamine for Victim M.P.'s use on at least three occasions, including on October 24, 2023, when she updated co-conspirator Fleming that the ketamine was delayed but on the way from her supplier --- a person she called the "scientist," or "master chef."

Meanwhile, co-conspirator Iwamasa was injecting Victim M.P. with ketamine on a daily basis.  On October 28, 2023, co-conspirator Iwamasa injected Victim M.P. using the ketamine provided by defendant, resulting in Victim M.P.'s death.

<u>Defendant attempted to destroy evidence relating to Victim M.P.</u> Later that same day, after news media reported on Victim M.P.'s passing, defendant contacted co-conspirator Fleming over Signal. Defendant set the setting on the Signal conversation thread to make all messages to disappear within one hour, and directed co-conspirator Fleming to "Delete all our messages."

Two days after Victim M.P.'s death, co-conspirator FLEMING texted defendant that he "got more info" that he was "90% sure that everyone is protected," and that they could blame co-conspirator Iwamasa.  Co-conspirator Fleming also advised that "they are doing a 3 month tox screening," and asked defendant "Does K stay in your system or is it immediately flushed out"?

<u>Defendant Knew About Ketamine's Deadly Potential Because Victim C.M. had Previously Overdosed</u>.  Defendant already knew the answer to co-conspirator Fleming's question.  Defendant had previously researched ketamine deaths in connection with the overdose of another one of her ketamine clients, Victim C.M.  On August 26, 2019, nearly four years prior, defendant sold ketamine to Victim C.M., who took the ketamine and died of a drug overdose later that same day.  After Victim C.M.'s passing, a family member of Victim C.M. sent a text message to defendant, stating: "The ketamine you sold my brother killed him.  It's listed as the cause of death."  After receiving that message, defendant then confirmed that ketamine can in fact kill by conducting a Google search for "can ketamine be listed as a cause of death[?]"  Rather than stop her operation after Victim C.M.'s death, defendant continue to deal out of the SANGHA Stash Location and continued to sell ketamine even after Victim M.P. died in 2023, until she was apprehended in 2024.

**III. Legal Standard**

    **A.    Presumption Of Detention in Drug Trafficking Cases**

Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 <u>et seq</u>., the court must hold a detention hearing to determine "whether any condition or combination of conditions . . . will reasonably assure the appearance of [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  <u>See</u> 18 U.S.C. § 3142; <u>United States v. Motamedi</u>, 767 F.2d 1403, 1406 (9th Cir. 1985).

Where the defendant is charged with an offense under the Controlled Substances Act with a maximum term of imprisonment of ten

years or more, "there is a rebuttable presumption" that defendant poses a flight risk and danger. United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting 18 U.S.C. § 3142(e)). The burden of production shifts to the defendant to rebut the presumption of dangerousness. Id. If the defendant proffers evidence to rebut the presumption, the court considers four factors: "(1) the nature and circumstances of the offense charged," "(2) the weight of the evidence against the person; (3) the history and characteristics of the person," and (4) danger to the community. Id. But the "presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" Id.

Under the Bail Reform Act, the court may revisit detention and reopen proceedings "at any time before trial" if the court finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing" on a defendant's risk of flight or danger. 18 U.S.C. § 3142(f)(2). "Generally, once a detention hearing is reopened, it is reopened to allow the court to receive any information, within reason, not submitted at the initial hearing, allowing the new information to be considered in context." United States v. Terrone, 454 F. Supp. 3d 1009, 1017 (D. Nev. 2020).

**IV. DEFENDANT IS A DANGER AND FLIGHT RISK AND MUST BE DETAINED PENDING TRIAL**

**A.  Defendant Is Presumed to Be a Flight Risk and Danger**

Two of defendant's felonies trigger the presumption for detention under 18 U.S.C. § 3142(e). Specifically, Count Thirteen charges her with distribution of ketamine resulting in death and

serious bodily injury, which carries a 15 year statutory maximum sentence, and Count Fifteen, charges possession with intent to distribute methamphetamine, with a maximum sentence of life imprisonment.  Defendant cannot rebut this presumption.

### B. Defendant Poses a Danger Due to Her High-Volume, Continuous, and Profit-Seeking Drug Trafficking

Defendant has been dealing drugs from the SANGHA Stash House since at least 2019.  Defendant's drug trafficking continued unabated during that half-decade, with defendant blithely indifferent to the fact that her ketamine contributed to the overdose deaths of Victim C.M. in 2019 and Victim M.P. in 2023.  Due to the high volume and long history of defendant's drug dealing, the government is continuing to investigate whether other victims exist.

There are troubling signs that defendant may be continuing to deal drugs while on pretrial release.  For one, defendant continues to reside at the SANGHA Stash House, from where she has long conducted her drug business.  It is unclear how defendant is financing the property or her current lifestyle.  Defendant rents the SANGHA Stash House for thousands of dollars per month, but, as reported by pretrial services, defendant SANGHA has been unemployed since 2019 (prior to which she claimed to have been self-employed as an "artist and singer" who did "art shows") and remains unemployed since her initial detention hearing.  Defendant was driving a rented Range Rover at the time of the initial hearing, and she is now leasing a 2024 BMW.  Despite defendant's period of unemployment (which notably ran concurrent to her operation of the SANGHA Stash Location, i.e., 2019 to 2024) defendant claimed to earn thousands of dollars in income a month.

Moreover, as recently as July 24, 2024, defendant posted a photo to social media wearing a bracelet with the word "MUSHY" and several mushroom charms.  (See Exhibit A.)  Notably, defendant was arrested in March 2024 at the SANGHA Stash Location with magic mushrooms.  And on the photo, defendant added text that reads: "Pulling out the old raver candy," and "#ravetothegrave," suggesting that she cannot be stopped and will persist in her drug lifestyle until death -- a callous choice of words, considering that her actions have sent two victims to theirs. (Id.)

### C. The Weight of the Evidence Supporting the Charges in the First Superseding Indictment Creates a Significant Risk that Defendant Will Flee

As a threshold matter, defendant's sentencing exposure in this case creates a significant risk that defendant --- a dual citizen of the U.S. and the United Kingdom --- will flee to avoid prosecution. Count Fifteen alone carries a mandatory minimum sentence of 10 years. Because defendant's drug trafficking activities are linked to at least two deaths, she will not be safety-valve eligible and will likely face significantly more custodial time.

The strength of the government's case is also a basis to believe defendant will flee.  Ketamine seized from the SANGHA stash location in March 2024 matched bottles defendant distributed to Victim C.M. and Victim M.P.  Despite defendant's best efforts, she was not able to totally destroy digital evidence, and the government has the very text message showing her attempted spoliation.  Co-conspirator Fleming, who has pleaded guilty to his role in the conspiracy and agreed to cooperate against defendant, would testify that defendant

was his drug source.[2] Co-conspirator Iwamasa, who has also pleaded guilty and agreed to cooperate, would testify that it was ketamine that he received from co-conspirator Fleming that killed Victim M.P.[3]

### D. Defendant Obstructed Justice and Has The Means to Flee

Defendant's directions to co-conspirator Fleming to delete evidence after Victim M.P.'s death shows that she is willing to obstruct justice to evade responsibility for her crimes. Her conduct evinces a disregard of the law, which include the Court's orders to appear for a trial where the evidence against her is overwhelming.

Based on defendant's lifestyle and spending, she has the financial means to flee. Moreover, although defendant had her passports confiscated by law enforcement, she holds British citizenship, and has a lengthy history of international travel, including repeated trips to Mexico, Spain, and Dubai, as well as trips to Canada, China, Japan, Italy, Greece, South America, Dubai, France, and Antigua.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court reopen detention proceedings against defendant and order that defendant be detained pending trial.

---

[2] United States v. Erik Fleming, 24-CR-417-SPG.
[3] United States v. Kenneth Iwamasa, 24-CR-408-SPG.