BILAL A. ESSAYLI
Acting United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorney
Chief, Terrorism and Export Crimes Section
HAOXIAOHAN CAI (Cal. Bar No. 331131)
Major Frauds Section
1200/1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone:     (213) 894-3667/0762
Facsimile:     (213) 894-0141
E-mail:   Ian.Yanniello@usdoj.gov
          Haoxiaohan.Cai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>JASVEEN SANGHA,<br>    aka "Ketamine Queen,"<br><br>          Defendant. | No. CR 24-236(A)-SPG-1<br><br>PLEA AGREEMENT FOR DEFENDANT<br>JASVEEN SANGHA |

1.    This constitutes the plea agreement between JASVEEN SANGHA ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts Two, Three, and Eleven, Twelve, and Thirteen of the first superseding indictment in United States v. JASVEEN SANGHA, CR No. 24-236(A)-SPG-1, which charges defendant with maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (Count Two), distribution of ketamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i) (Counts Three, Eleven, and Twelve), and distribution of ketamine resulting in death and serious bodily injury, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i) (Count Thirteen).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived

2

from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following:

i.   $5,723 in United States currency ("Forfeitable Property").

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the property.

c.   That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

d.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

e.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of herself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right she may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

f.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

g.   Not to claim that reasonable cause to seize the

Forfeitable Property was lacking.

h.    To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

i.    To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

j.    That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

k.    That with respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

THE USAO'S OBLIGATIONS

4.    The USAO agrees to:

4

1           a.   Not contest facts agreed to in this agreement.

2           b.   Abide by all agreements regarding sentencing contained

3    in this agreement.

4           c.   At the time of sentencing, move to dismiss the

5    remaining counts of the first superseding indictment as against

6    defendant.  Defendant agrees, however, that at the time of sentencing

7    the Court may consider any dismissed charges in determining the

8    applicable Sentencing Guidelines range, the propriety and extent of

9    any departure from that range, and the sentence to be imposed.

10          d.   At the time of sentencing, provided that defendant

11   demonstrates an acceptance of responsibility for the offenses up to

12   and including the time of sentencing, recommend a two-level reduction

13   in the applicable Sentencing Guidelines offense level, pursuant to

14   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

15   additional one-level reduction if available under that section.

16                         NATURE OF THE OFFENSES

17        5.   Defendant understands that for defendant to be guilty of

18   the crime charged in Count Two, that is, maintaining a drug involved

19   premises, in violation of Title 21, United States Code, Section

20   856(a)(1), the following must be true: defendant knowingly opened,

21   leased, rented, used, or maintained any place, whether permanently or

22   temporarily, for the purpose of manufacturing, distributing, or using

23   a controlled substance. "For the purpose of manufacturing,

24   distributing, or using a controlled substance" means that

25   manufacturing, distributing, or using a controlled substance is one

26   of the primary or principal uses to which the residence is put.

27        6.   Defendant understands that for defendant to be guilty of

28   the crimes charged in Count Three, Eleven, and Twelve, that is,

distribution of ketamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(E)(i), the following must be true: (1) defendant knowingly distributed ketamine; and (2) defendant knew that it was ketamine or some other federally controlled substance.

7.   Defendant understands that defendant may be guilty of distribution of ketamine even if she personally did not commit the act or acts constituting the crime but aided and abetted in its commission by causing the distribution of ketamine.  For defendant to be guilty of aiding and abetting pursuant to Title 18, United States Code, Section 2(b), the following must be true: defendant willfully caused an act to be done that, if directly performed by her, would be an offense against the United States.

8.   Defendant understands that for defendant to be guilty of the crime charged in Count Thirteen, that is, distribution of ketamine resulting in death and serious bodily injury, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(E)(i), the following must be true: (1) defendant knowingly distributed ketamine; (2) defendant knew that it was ketamine or some other federally controlled substance; (3) death or serious bodily injury resulted from the use of such controlled substance.

9.   Defendant understands that defendant may be guilty of distribution of ketamine resulting in death and bodily injury even if she personally did not commit the act or acts constituting the crime but aided and abetted in its commission.  For defendant to be guilty of aiding and abetting pursuant to Title 18, United States Code, Section 2(a), the following must be true: (1) distribution of ketamine was committed by someone; (2) defendant knowingly and intentionally aided, counseled, commanded, induced or procured that

6

person with respect to at least one element of distributing ketamine, (3) the defendant acted with the intent to facilitate distribution of ketamine; and (4) the defendant acted before the crime was committed.

<u>PENALTIES</u>

10.   Defendant understands that the statutory maximum sentence that the Court can impose for Count Two, that is, maintaining a drug-involved premises, in violation of Title 21, United States Code, Section 856(a)(1), is: 20 years imprisonment; a lifetime period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.   Defendant understands that the statutory maximum sentence that the Court can impose for each of the violations in Counts Three, Eleven, and Twelve, that is, distribution of ketamine, a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(E)(i), is: 10 years imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands that the statutory maximum sentence that the Court can impose for Count Thirteen, that is, distribution of ketamine resulting in death or serious bodily injury, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(E)(i), is: 15 years imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is 65 years of imprisonment; a lifetime of supervised release; a fine of $2,500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $500.

14.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

15.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

16.  Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs

8

funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

17. Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her convictions on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her pleas may entail, even if the consequence is automatic removal from the United States.

18. Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty, that is, Victim M.P. and Victim C.M. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty. In particular, defendant agrees that the Court may

order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.

FACTUAL BASIS

19.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

**Defendant Possessed With Intent To Distribute Methamphetamine and Ketamine at Her North Hollywood Residence**

On March 19, 2024, in North Hollywood, California, within the Central District of California, defendant possessed various controlled substances, including methamphetamine, a Schedule II controlled substance, and ketamine, a Schedule III controlled substance. When defendant possessed the methamphetamine, ketamine, and other controlled substances, she intended to sell the drugs to drug customers.  Specifically, on March 19, 2024, federal and local law enforcement officers executed a search warrant at defendant's North Hollywood residence and found the following: approximately 1727.27 grams of orange pressed pills (27 of which were tested by a laboratory that confirmed each pill contained methamphetamine), 79

vials of liquid ketamine, MDMA tablets, counterfeit Xanax pills, baggies containing powdered ketamine and cocaine, all of which she possessed with the intent to distribute.  Inside her residence, defendant Sangha also possessed other items used to traffic in narcotics, including a gold money counting machine, a scale, a wireless signal and hidden camera detector, drug packaging materials, and $5,723 in cash.

Since at least June 14, 2019, defendant used her North Hollywood residence to store, package, and distribute drugs, including ketamine and methamphetamine.  Among other things, defendant would solicit drug customers to buy drugs and to pick the drugs up from her North Hollywood residence.  Defendant would also tell her customers to deposit money into and/or retrieve drugs from a lockbox she maintained outside of her residence.  For example, on October 31, 2020, a drug customer contacted defendant by text and requested to purchase 6 bottles of liquid ketamine.  In response, defendant advised she was running low on ketamine she sold in orange capped vials, and would "have to prob throw in a blue cap of [sic] too if I don't have it all ready."  Defendant then said she would include two ecstasy pills, and confirmed that there was "6 total mixed up of meow and 2 baby yoda is in the lockbox" and provided the drug customer with the code to the lockbox.

### Defendant Sold Ketamine to Victim C.M. on August 26, 2019

On August 26, 2019, defendant distributed ketamine to Victim C.M.  Specifically, in response to Victim C.M.'s text message requesting to travel to the North Hollywood residence to purchase ketamine, defendant confirmed she had ketamine to sell, stating, "I left [Individual 1] 4 . . . if u want them for 120 each take the 4."

Defendant also advised, "I have too much in inventory for now. I'll
hook u up. Everyone else paying 140," and sent Victim C.M. contact
information for Individual 1.  Victim C.M. then picked up 4 vials of
ketamine from defendant's North Hollywood residence.  After receiving
the drugs, Victim C.M. sent an electronic payment of $480 to
defendant using the Venmo application.

**Defendant Worked With Co-Conspirator Fleming to Distribute Ketamine
to Victim M.P.**

Beginning on an unknown date but no later than in or around
October 2023, and continuing until at least October 30, 2023, in Los
Angeles County, within the Central District of California, and
elsewhere, defendant conspired with others known and unknown,
including Co-Conspirator Erik Fleming ("Co-Conspirator Fleming"), to
knowingly and intentionally distribute ketamine to Victim M.P.
Defendant joined the agreement knowing of its purpose and intending
to help accomplish its purpose.  At all times, defendant knew that
the ketamine she distributed was intended for further distribution to
Victim M.P.

Specifically, on October 11, 2023, defendant used the Signal
messaging application to text Co-Conspirator Fleming that her
ketamine was high quality, and offered to provide a sample bottle for
Victim M.P., stating: "It's unmarked but it's amazing – he take one
and try it and I have more if he likes."  Co-conspirator Fleming then
forwarded a screenshot of defendant's message to Co-conspirator
Kenneth Iwamasa, Victim M.P.'s personal assistant, and wrote: "[j]ust
got this from my person. She only deal[s] with high end and celebs.
If it were not great stuff she'd lose her business."

On October 12, 2023, Co-Conspirator Fleming called defendant using the Signal application to obtain a sample vial of ketamine and told defendant that the ketamine was intended for Victim M.P.  That same day, Co-Conspirator Fleming texted Co-Conspirator Iwamasa that his "hook up," that is, defendant, "was able to get the kind that is used for intermuscular . . . . I guarantee it's going to be amazing." Defendant sent Co-Conspirator Fleming a photograph of her unlabeled, unmarked clear glass vials of ketamine, which he then forwarded to Co-Conspirator Iwamasa to show him "what they look like."

On October 13, 2023, defendant met with Co-Conspirator Fleming at her North Hollywood residence and sold him a ketamine vial with a blue cap that defendant understood would be used by Victim M.P.

**Defendant and Co-Conspirator Fleming Sold 50 Vials of Ketamine to Victim M.P.**

On October 13, 2023, after conferring with defendant, Co-Conspirator Fleming texted Co-Conspirator Iwamasa that he could get as many vials of ketamine from defendant as Co-Conspirator Iwamasa wanted, stating: "Let me know how many . . . and I'll confirm what she can get. But as now she said she can fill any order." In response, Co-Conspirator Iwamasa advised he would purchase "25 vials $5500 @220 +500 for you for logistics."

On October 14, 2023, after picking up cash from Co-Conspirator Iwamasa, Co-Conspirator Fleming traveled to defendant's North Hollywood residence and purchased 25 vials of ketamine from defendant to sell to Victim M.P.  Co-Conspirator Fleming then delivered the ketamine to Co-Conspirator Iwamasa so Co-Conspirator Iwamasa could inject Victim M.P. with the ketamine.

On October 23, 2023, defendant again conferred with Co-Conspirator Fleming about her ketamine supply, including the availability of more ketamine to sell to Victim M.P.  The following day, on October 24, 2023, after conferring with defendant over the Signal application, Co-Conspirator Fleming traveled to defendant's North Hollywood residence, where defendant sold and accepted cash for 25 additional vials of ketamine that defendant understood were intended to be used by Victim M.P.  Because of the size of the purchase, defendant also included ketamine lollipops in the order. Co-Conspirator Fleming delivered the ketamine order to Co-Conspirator Iwamasa later that day.

On October 25, 2023, defendant texted Co-Conspirator Fleming over Signal to coordinate additional drug sales to Victim M.P., noting that she would be traveling the following week: "Please let me know if u think There will be another round because the scientist he'll be gone as well . . .  I'll have to know ahead of time to get that sorted out before we leave."  The next day, Co-Conspirator Fleming texted Co-Conspirator Iwamasa, "How are you? I realized on next shipment we could probably get it packaged in fewer boxes instead or resale size."

Leading up to Victim M.P.'s death on October 28, 2023, Co-Conspirator Iwamasa repeatedly injected Victim M.P. with the ketamine the defendant supplied to Co-Conspirator Fleming.  Specifically, on October 28, 2023, Co-Conspirator Iwamasa injected Victim M.P. with at least 3 shots of defendant's ketamine that he received from Co-Conspirator Fleming, which resulted in the death and serious bodily injury of Victim M.P.

14

**Defendant Directs Co-Conspirator Fleming to Delete Evidence After Learning About Victim M.P.'s Death**

On October 28, 2023, after learning about Victim M.P.'s death from news reports, defendant called Co-Conspirator Fleming on Signal to discuss how to distance themselves from Victim M.P.'s death.  That day, defendant updated the settings on the Signal application to automatically delete her messages with Co-Conspirator Fleming and instructed him to "Delete all our messages."

On October 30, 2023, using Signal, Co-Conspirator Fleming left a voice message for defendant and texted: "Please call . . . Got more info and want to bounce ideas off you. I'm 90% sure everyone is protected.  I never dealt with [Victim M.P.]. Only his Assistant.  So the Assistant was the enabler. Also they are doing a 3 month tox screening . . . Does K stay in your system or is it immediately flushed out[?]."

SENTENCING FACTORS

20.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

21.  Except as set forth in paragraph 4(d) above, defendant and the USAO have no agreement as to the appropriate sentence or the applicable Sentencing Guidelines factors.  Except as set forth in paragraph 4(d), both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history score and category, base offense level, specific offense characteristics, adjustments, departures, and variances.

22.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

23.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

24.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

25.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

26.  Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the range corresponding to an offense level of 34 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law,

the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

27.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

28.   The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 33 and the criminal history calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

29.  Defendant agrees that if, after entering a guilty pleas
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty pleas on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement; and (b) should the USAO choose to
pursue any charge or any civil, administrative, or regulatory action
that was either dismissed or not filed as a result of this agreement,
then (i) any applicable statute of limitations will be tolled between
the date of defendant's signing of this agreement and the filing
commencing any such action; and (ii) defendant waives and gives up
all defenses based on the statute of limitations, any claim of pre-
indictment delay, or any speedy trial claim with respect to any such
action, except to the extent that such defenses existed as of the
date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

30.  This agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and an
Assistant United States Attorney.

## BREACH OF AGREEMENT

31.  Defendant agrees that if defendant, at any time after the
signature of this agreement and execution of all required
certifications by defendant, defendant's counsel, and an Assistant
United States Attorney, knowingly violates or fails to perform any of
defendant's obligations under this agreement ("a breach"), the USAO
may declare this agreement breached.  All of defendant's obligations
are material, a single breach of this agreement is sufficient for the

USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

32. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

33. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

34. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

35. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to

fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be between
the statutory mandatory minimum and the statutory maximum.

NO ADDITIONAL AGREEMENTS

36.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional
promise, understanding, or agreement may be entered into unless in a
writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

37.  The parties agree that this agreement will be considered
part of the record of defendant's guilty plea hearing as if the
entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

BILAL A. ESSAYLI
Acting United States Attorney

_____                    8/18/25
IAN V. YANNIELLO                             Date
HAOXIAOHAN CAI
Assistant United States Attorney

_____                    8/14/25
JASVEEN SANGHA                               Date
Defendant

_____                    8/14/25
MARK GERAGOS                                 Date
ALEXANDRA KAZARIAN
Attorneys for Defendant JASVEEN
SANGHA

1

2

3

4                        <u>CERTIFICATION OF DEFENDANT</u>

5          I have read this agreement in its entirety.  I have had enough

6    time to review and consider this agreement, and I have carefully and

7    thoroughly discussed every part of it with my attorney.  I understand

8    the terms of this agreement, and I voluntarily agree to those terms.

9    I have discussed the evidence with my attorney, and my attorney has

10   advised me of my rights, of possible pretrial motions that might be

11   filed, of possible defenses that might be asserted either prior to or

12   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

13   of relevant Sentencing Guidelines provisions, and of the consequences

14   of entering into this agreement.  No promises, inducements, or

15   representations of any kind have been made to me other than those

16   contained in this agreement.  No one has threatened or forced me in

17   any way to enter into this agreement.  I am satisfied with the

18   representation of my attorney in this matter, and I am pleading

19   guilty because I am guilty of the charges and wish to take advantage

20   of the promises set forth in this agreement, and not for any other

21   reason.

22

23   JASMIN SANGHA                          8/14/25
     Defendant                              Date

24

25

26

27

28

                                    23

1

2

3

4                    <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

5          I am JASVEEN SANGHA's attorney.  I have carefully and thoroughly

6    discussed every part of this agreement with my client.  Further, I

7    have fully advised my client of her rights, of possible pretrial

8    motions that might be filed, of possible defenses that might be

9    asserted either prior to or at trial, of the sentencing factors set

10   forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

11   provisions, and of the consequences of entering into this agreement.

12   To my knowledge: no promises, inducements, or representations of any

13   kind have been made to my client other than those contained in this

14   agreement; no one has threatened or forced my client in any way to

15   enter into this agreement; my client's decision to enter into this

16   agreement is an informed and voluntary one; and the factual basis set

17   forth in this agreement is sufficient to support my client's entry of

18   guilty pleas pursuant to this agreement.

19

20   _____          8/14/25
     MARK GERAGOS                             _____
21   ALEXANDRA KAZARIAN                       Date
     Attorneys for Defendant JASVEEN
22   SANGHA

23

24

25

26

27

28