# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone (213) 625-3900
Facsimile (213) 232-3255
Geragos@Geragos.com

MARK J. GERAGOS        SBN 108325
ALEXANDRA KAZARIAN     SBN 244494
*Attorneys for Defendant*, JASVEEN SANGHA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 2:24-cr-00236-SPG |
|---|---|
| Plaintiff, | **DEFENDANT JASVEEN SANGHA'S OBJECTIONS TO PRESENTENCE REPORT AND PROBATION RECOMMENDATION** |
| v. | |
| JASVEEN SANGHA, | |
| Defendant. | |

Defendant Jasveen Sangha ("Defendant" or "Ms. Sangha"), by and through retained counsel, hereby submits the following objections to the Presentence Investigation Report ("PSR") dated November 6, 2025, and to the Probation Officer's Sentencing Recommendation ("REC") dated November 5, 2025, pursuant to Federal Rule of Criminal Procedure 32(f).

1

These objections are made to ensure that the Court sentences Ms. Sangha on the basis of accurate facts, a correctly calculated Guidelines range, and supervised-release conditions that comply with 18 U.S.C. § 3583(d).

Defendant does not object to the offense of conviction, statutory maximums, or the criminal history category I reflected in the PSR. Rather, she challenges specific guideline applications, characterizations, and conditions as set forth below.

I. OBJECTION NO. 1 - IMPROPER "MAINTAINING PREMISES" ENHANCEMENT UNDER §2D1.1(B)(12) IN A CASE THAT ALREADY INCLUDES A § 856 CONVICTION

The PSR applies a +2 level specific offense characteristic under U.S.S.G. §2D1.1(b)(12) on the theory that Ms. Sangha "maintained a premises for the purpose of manufacturing or distributing a controlled substance," based on her use of the North Hollywood residence from June 14, 2019 through March 19, 2024.

But Ms. Sangha is already convicted in Count 2 of maintaining a drug premises under 21 U.S.C. § 856(a)(1). Applying §2D1.1(b)(12) in addition to a separate § 856 count double-counts the same conduct in a way the Guidelines explicitly discourage.

The Application Notes to §2D1.1(b)(12) provide that this enhancement is intended for cases where the defendant's offense involves use of a premises, not where the defendant is separately convicted of the premises offense itself. The conduct underlying the (b)(12) enhancement and Count 2 is identically described in ¶¶25–31 and ¶¶57–59 of the PSR: using the North Hollywood residence as a base of operations, using a lockbox, and storing drugs there.

Because the same premises-maintenance conduct is (1) charged and punished as a separate count of conviction and (2) used again to increase the offense level under §2D1.1(b)(12), the enhancement is impermissible double-counting. At minimum, it is not "necessary" to capture any incremental harm that is not already fully reflected in Count 2 and the drug quantity base offense level.

*Request:*

Defendant respectfully requests that the Court sustain this objection and decline to apply the +2 enhancement under §2D1.1(b)(12). The Total Offense Level should be reduced from 36 to 34 if all other adjustments remain as in the PSR.

## II.  OBJECTION NO. 2 - AGGRAVATING ROLE ENHANCEMENT UNDER §3B1.1(C) IS UNSUPPORTED BY THE RECORD

The PSR applies a +2 level aggravating role enhancement under U.S.S.G. §3B1.1(c), asserting that Ms. Sangha "arranged the supply of controlled substances and facilitated the arrangements of their distribution," "delegated tasks" to her roommate Kevorkian and to her then-boyfriend Jason Taylor, and therefore "acted as an organizer and leader in the offense."

This conclusion is not supported by the factual record or the Guidelines' standard:

1. No evidence of managerial control over a participant.

    The examples cited in ¶¶29–31 show Ms. Sangha asking Kevorkian to leave drugs in a lockbox and coordinating with Taylor to pick up items or be present at the apartment. These reflect logistical coordination, not managerial authority or decision-making power over other "participants" in the sense contemplated by §3B1.1. Nothing in the PSR indicates that Kevorkian or Taylor were "subordinate" to Ms. Sangha in a hierarchy or that she exercised decision-making or profit-allocation authority over them.

2. No multi-participant hierarchy or criminal enterprise shown.

    The PSR simply states that "the instant offense involved Sangha, Plasencia, Fleming, and her unindicted coconspirators participating in distributing controlled substances" and then concludes that she "demonstrat[ed] her acting as an organizer and leader." There is no analysis of the §3B1.1 factors (decision-making authority, recruitment of accomplices, degree of control, share of profits, etc.), nor any specific factual findings that she recruited, controlled, or supervised other participants as opposed to acting as a supplier and co-participant.

3. Guideline Commentary requires more than being a source of supply.

Being the source of drugs, or being the person whose residence was used, does not automatically make a defendant an "organizer" or "leader." The PSR identifies no conduct beyond being a seller and coordinating pick-ups that would justify §3B1.1(c).

Given the absence of findings that Ms. Sangha exercised managerial or supervisory control over at least one other criminally responsible participant, the §3B1.1(c) enhancement is legally and factually unsupported.

*Request:*

Defendant respectfully requests that the Court sustain this objection and strike the +2 role enhancement. If the Court also removes the improper premises enhancement, the combined effect would be a reduction from offense level 36 to 32 (before acceptance), or 30 after two levels for acceptance, subject to the Court's ruling on acceptance and zero-point offender status.

### III. OBJECTION NO. 3 - OBSTRUCTION OF JUSTICE ENHANCEMENT UNDER §3C1.1 IS MISAPPLIED

The PSR adds +2 levels for obstruction under U.S.S.G. §3C1.1, based on two assertions: (1) that Ms. Sangha "coordinated with Fleming in concealing their involvement in Perry's death" and (2) that she instructed him to "delete all our messages" and changed Signal settings to delete chats. This is mirrored in the narrative at ¶¶44–45.

The enhancement is improper for several reasons:

1. No evidence of an "official investigation" or proceeding at the time.

The record shows that Ms. Sangha reacted immediately after media reports of Perry's death before any contact from law enforcement or knowledge of an official investigation. Application Note 4(d) to §3C1.1 requires an attempt to destroy or conceal "material" evidence in relation to an ongoing investigation or proceeding. The PSR contains no finding that, at the time she changed her Signal settings, (a) she knew of an official investigation, or (b) any specific law enforcement inquiry had begun.

4

DEFENDANT JASVEEN SANGHA'S OBJECTIONS TO PRESENTENCE REPORT AND PROBATION RECOMMENDATION

2. No finding that any evidence was actually destroyed, material, or unavailable to investigators.

The PSR does not identify any specific messages that were lost, that could not be recovered from other devices/recipients, or that otherwise "materially impeded" the investigation. Instead, it infers obstruction from a single text ("delete all our messages") and a generalized statement that she "routinely utilized encrypted messaging applications." That is not sufficient to satisfy §3C1.1's requirement of a willful, material impediment.

3. Panic and poor judgment is not the same as willful obstruction.

The plea agreement and PSR both confirm that Ms. Sangha accepted responsibility for her conduct and did not lie to law enforcement or suborn perjury. A panicked attempt to distance herself following a publicized tragedy - without more -does not rise to the level of obstruction warranting a two-level enhancement, particularly where the PSR identifies no actual interference with the investigation or prosecution.

4. Inconsistent with acceptance of responsibility.

The same conduct is being used to (a) justify an obstruction enhancement, and (b) implicitly justify withholding full acceptance credit. That double-penalizes the same behavior and undercuts the Guidelines' structure, which treats obstruction and acceptance as mutually relevant: truly obstructive conduct usually precludes acceptance, but here Probation tries to have it both ways.

**Request:**

Defendant respectfully requests that the Court sustain this objection and decline to apply §3C1.1. The Adjusted Offense Level should be reduced by 2 levels.

### IV. OBJECTION NO. 4 - FAILURE TO RECOMMEND THE THIRD LEVEL FOR ACCEPTANCE OF RESPONSIBILITY UNDER §3E1.1(B)

The PSR grants only two levels of acceptance under §3E1.1(a) and states that "the Government has indicated that Sangha has not assisted authorities … by timely notifying authorities of the intention to enter a plea of guilty." It therefore refuses to recommend the third level under §3E1.1(b).

Defendant objects to this characterization and to the lack of a neutral explanation:

1. Timing and posture demonstrate substantial savings of resources.

    Ms. Sangha pled on September 3, 2025 to a detailed plea agreement that mooted the need for trial preparation on a high-profile, multi-defendant case with extensive expert and victim-witness logistics. There is no finding that, after the plea, the government had to proceed as if the case were going to trial.

2. Rule 32 and §3E1.1(b) require clarity: Government's position is not binding on the Court's factual findings.

    The PSR simply reports that "the Government has indicated" the defendant has not assisted, but it does not analyze whether the timing of the plea actually allowed the government to avoid trial preparation. That is the actual standard. To the extent the government has not yet formally moved under §3E1.1(b), that is an issue for argument at sentencing - not a reason for the PSR to prejudge the application of §3E1.1(b) and lock in a narrative that she did not "assist" authorities.

*Request:*

Defendant respectfully requests that the Court:

1. Direct that the PSR be amended to state that the application of §3E1.1(b) depends on whether the government moves at sentencing, and
2. Encourage/permit the government to move for the third level at the sentencing hearing based on the actual savings of resources and the timing of Ms. Sangha's plea.

6

DEFENDANT JASVEEN SANGHA'S OBJECTIONS TO PRESENTENCE REPORT AND PROBATION RECOMMENDATION

Defendant preserves her objection that, on this record, the full 3-level reduction is warranted.

### V. OBJECTION NO. 5 - OVERBROAD RELEVANT CONDUCT AND CAUSATION LANGUAGE REGARDING TWO DEATHS

The PSR treats the "re-distribution of ketamine" that "contributed and/or resulted in the deaths of two victims, C.M. and M.P." as relevant conduct under §1B1.3(a)(1).

1. The PSR's phrasing suggests two separate "death-resulting" offenses of conviction, which is incorrect; only Count 13 is a death-resulting offense of conviction.
2. The C.M. death not a separate death-resulting count and should not be treated as a second death as to Count 13 for guideline purposes or for restitution beyond what the statute permits.

*Request:*

Defendant respectfully requests that the Court direct Probation to clarify that:

- Count 13 is the only offense of conviction that statutorily incorporates "resulting in death,"
- The C.M. death does not constitute a separate death-resulting offense for guideline or restitution multipliers beyond those permitted by statute.

### VI. OBJECTION NO. 6 - ZERO-POINT OFFENDER REDUCTION (§4C1.1) – PRESERVATION OF LEGAL ISSUE

The PSR correctly notes that Ms. Sangha has zero criminal history points and otherwise would meet many of the §4C1.1(a) criteria, but denies the two-level reduction on the ground that "because the offense resulted in the death of Perry, Sangha does not meet the criteria in USSG §§4C1.1(a)(2) through (10)."

Defendant acknowledges that the literal text of §4C1.1(a)(4) states that the reduction does not apply where "the offense … resulted in death or serious bodily injury," and that Count 13 is such an offense. Nonetheless, for purposes of a clean record, defendant:

1. Preserves the argument that §4C1.1 should be interpreted holistically in multi-count cases to focus on overall offender profile and that, where death-resulting is already fully

7

DEFENDANT JASVEEN SANGHA'S OBJECTIONS TO PRESENTENCE REPORT AND PROBATION RECOMMENDATION

accounted for by a high base offense level and §3553(a) analysis, a categorical bar is inconsistent with the Commission's stated recidivism goals for true first-offenders; and

2. Requests that the PSR clarify that the denial is based solely on the Commission's categorical exclusion tied to Count 13, not on any other conduct or alleged recidivist behavior.

***Request:***

Defendant respectfully requests that the Court note this objection, and that Probation be directed to clarify that the only reason Ms. Sangha does not receive the §4C1.1 reduction is the death-resulting element of Count 13, not any broader assessment of her history or characteristics.

### VII. OBJECTION NO. 7 - SPECIAL SUPERVISED-RELEASE CONDITIONS 9–13 (DIGITAL SEARCH, DEVICE/ACCOUNT RESTRICTIONS, ENCRYPTED-APP BAN, COMPUTER MONITORING PROGRAM) ARE OVERBROAD AND NOT NARROWLY TAILORED

The Recommendation proposes a suite of digital and electronic-search conditions, including:

- Condition 9: Broad search of person, residence, vehicles, "computers, cell phones, other electronic communications or data storage devices or media, email accounts, social media accounts, cloud storage accounts," based on "reasonable suspicion" of any supervision violation.
- Condition 10: Categorical ban on Signal, WhatsApp, or "any similar application that provide for end-to-end encrypted communication."
- Conditions 11 through 13: Mandatory disclosure and pre-approval of all devices/account credentials and enrollment in a Computer Monitoring Program at defendant's expense.

The REC justifies these conditions solely by noting that "the offense … involved the use of electronic means … and the encrypted applications, Signal and WhatsApp."

8

DEFENDANT JASVEEN SANGHA'S OBJECTIONS TO PRESENTENCE REPORT AND PROBATION RECOMMENDATION

Under 18 U.S.C. § 3583(d), a special condition must: (1) be reasonably related to the §3553(a)(1) and (a)(2)(B) - (D) factors, (2) impose no greater deprivation of liberty than reasonably necessary, and (3) be consistent with Sentencing Commission policy statements. On this record, Conditions 9 - 13 are overbroad:

1. Condition 9 - Scope of search.

    This condition authorizes sweeping access to all digital accounts and cloud storage, not limited to the types of communications or data reasonably related to drug trafficking or supervision compliance. A narrowly tailored condition could be limited to devices/accounts where there is reasonable suspicion of drug-related or supervision-related violations; the current formulation invites fishing expeditions into every aspect of Ms. Sangha's digital life.

2. Condition 10 - Blanket ban on encrypted apps.

    Prohibiting all use of Signal, WhatsApp, and "any similar application" is functionally a ban on a major portion of modern communication, including legitimate, everyday uses (family, business, telehealth, etc.). The offense did not involve online exploitation, fraud, hacking, or cyber-stalking; it involved drug transactions that were also conducted by phone, in person, and via standard text. An across-the-board encrypted-app ban is a greater deprivation than necessary.

3. Conditions 11-13 Computer Monitoring Program.

    Mandatory pre-approval and monitoring of any digital device or account, at defendant's cost, is normally reserved for cases involving computer-facilitated sexual exploitation, hacking, or comparable cyber-offenses. Here, the nexus is far weaker. The conditions would effectively make ordinary employment and communication burdensome without a clear link to recidivism prevention.

**Request:**

Defendant respectfully requests that the Court:

- Strike Conditions 10, 12, and 13 as unnecessary and overbroad; and

- Narrow Condition 9 and 11 to (a) require reasonable suspicion of drug-related or supervision-related misconduct and (b) limit the scope of any digital search to devices/accounts reasonably believed to contain evidence of such misconduct.

### VIII. OBJECTION NO. 8 - RESTITUTION DISCUSSION – CLARIFICATION THAT AMOUNTS ARE UNKNOWN AND THAT THE DEFENSE HAS NOT WITHHELD INFORMATION

Both the PSR and REC state that "restitution is applicable" but that "sufficient information has not been provided" to recommend an amount.

Defendant does not oppose restitution as a legal matter and has not withheld information; rather, the amounts of funeral and related expenses are not yet known to Probation. The current language risks implying that defense is responsible for the lack of figures.

*Request:*

Defendant respectfully requests that the PSR and REC be amended to clarify that:

- Restitution is legally applicable,
- No specific documentation has yet been provided to Probation by the victims or third parties regarding funeral and related costs, and
- The parties may request a separate restitution schedule or hearing under 18 U.S.C. § 3664(d)(5) once amounts are known.

### IX. OBJECTION NO. 9 - SELECTIVE CHARACTERIZATIONS OF "HISTORY AND CHARACTERISTICS" AND "NATURE AND SERIOUSNESS" IN THE RECOMMENDATION

The REC emphasizes that Ms. Sangha "redistributed large volumes of controlled substances," "distributed at least 50 vials of ketamine within just one month," and that she "grew up in a stable home with financial stability."

While those are factually grounded, the REC minimizes or omits equally documented mitigating facts that are already in the PSR:

- Her 17 months of sobriety,

10

DEFENDANT JASVEEN SANGHA'S OBJECTIONS TO PRESENTENCE REPORT AND PROBATION RECOMMENDATION

- Her role in leading NA groups, sponsoring others, and working institutional jobs in custody,
- Her significant medical issues (asthma, prior cancer surgery, bladder ulcers, recent numbness) awaiting verification,
- Her zero criminal history, strong family support, and advanced education.

*Request:*

Defendant does not ask the Court to "rewrite" the Recommendation, but requests that the Court give equal weight to the mitigating facts already documented in the PSR when applying §3553(a), and that any final PSR add a brief reference to Ms. Sangha's sustained sobriety and in-custody programming as part of her "history and characteristics."

### X. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court:

1. Sustain Objection Nos. 1-3 and 7-8 and order the PSR amended accordingly;
2. Note and preserve Objection No. 6 regarding §4C1.1;
3. Direct Probation to correct or clarify the identified paragraphs in both the PSR and the Recommendation; and
4. Adopt a corrected guideline calculation and set of supervised-release conditions consistent with the Court's rulings on these objections.

DATED:  November 20, 2025

GERAGOS & GERAGOS, APC

By: /s/ Alexandra Kazarian
MARK J. GERAGOS
ALEXANDRA KAZARIAN
*Attorneys for Defendant,*
JASVEEN SANGHA