BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorney
Chief, National Security Division
HAOXIAOHAN CAI (Cal. Bar No. 331131)
Assistant United States Attorney
Major Frauds Section
1500/1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone:    (213) 894-3667/0762
Facsimile:    (213) 894-0141
E-mail:   Ian.Yanniello@usdoj.gov
          Haoxiaohan.Cai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>                    v.<br><br>JASVEEN SANGHA,<br>     aka "Ketamine Queen,"<br><br>              Defendant. | No. CR 24-236-SPG(A)-1<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM AND NEW OBJECTIONS TO THE PSR (Dkt. 130); DECLARATION OF HAOXIAOHAN CAI AND EXHIBITS E-G |

     Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Ian V. Yanniello and Haoxiaohan Cai, hereby files its Response to Defendant Jasveen Sangha's Sentencing Memorandum and New Objections to the PSR. (Dkt. 130).

//

//

This filing is based upon the attached memorandum of points and authorities, the files and records in this case, the declaration of Haoxiaohan Cai and attached Exhibits E-G, and such further evidence and argument as the Court may permit.

Dated: April 3, 2026                    Respectfully submitted,

                                        BILAL A. ESSAYLI
                                        First Assistant United States
                                        Attorney

                                        IAN V. YANNIELLO
                                        Assistant United States Attorney
                                        Chief, National Security Division


                                        _____/s/_____
                                        IAN V. YANNIELLO
                                        HAOXIAOHAN CAI
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Defendant's sentencing position tries to rewrite history to paint defendant --- not those who died ingesting her drugs --- as the victim.  But defendant is not a victim.  She repeatedly sold dangerous drugs in high volume; she ran a stash house and directed others to help sell her drugs; she obstructed justice to conceal her actions; and she was fully aware that her drug dealing contributed to at least two deaths --- yet kept selling the drugs to others.  Not only does defendant's filing ignore these aggravating facts, it also ignores the plain language of the Guidelines in an attempt to avoid the application of sentencing enhancements that clearly apply to the facts of this case.  For the reasons set forth in the government's sentencing position and below,[1] the government submits a sentence of 15 years is necessary, just, and appropriate under the circumstances.

**I.   Undisputed Evidence Establishes that Defendant Possessed More Than 1.5 Kilograms of Pressed Methamphetamine Pills**

In March 2024, law enforcement executed a search warrant at defendant's North Hollywood residence and found significant quantities of various drugs, including thousands of pressed methamphetamine pills --- all of which were orange in color and visually identical.  (<u>See</u> Declaration of Haoxiaohan Cai ("Cai Decl."), Ex. E [Photographs depicting pressed methamphetamine pills seized from defendant's residence].)  Although the laboratory randomly tested numerous methamphetamine pills, consistent with

---

[1] On November 11, 2025, defendant filed an initial set of objections to the PS (Dkt. 101), which the government addressed in its sentencing position.  (Dkt. 127.)  This filing addresses additional objections that defendant raises for the first time in her sentencing position. (Dkt. 130.)

nationwide practice, defendant claims the Court cannot rely on the laboratory's determination that she possessed approximately 1,727 grams of a mixture and substance containing methamphetamine because the government did not test *every pill*.  This argument is meritless.

The government's "burden at sentencing [to prove methamphetamine content] is substantially lower than at trial, requiring only that it prove that the methamphetamine attributed to the defendant is more likely than not methamphetamine." United States v. Yates, 98 F.F.4th 826, 833-834 (7th Cir. 2024) (cleaned up).  "Meeting that standard does not require the government to test every last gram of methamphetamine," which goes "far beyond what due process" requires. Id.  Instead, "sentencing courts are permitted to extrapolate the nature and quantity of drugs involved in an offense based on lab reports that tested only a sample of the overall quantity." United States v. Dinh, 920 F.3d 307, 313 (5th Cir. 2019).

Here, agents collected thousands of identical orange counterfeit pills from three different locations in defendant Sangha's stash house, and these pills were assigned three DEA Exhibit numbers: Exhibits 16, 18, and 34. (See Cai Decl. Ex. E.).  When the DEA Southwest Laboratory examined these exhibits, they concluded that DEA Exhibit 16 contained 715 pills, DEA Exhibit 18 contained 3,211 pills, and DEA Exhibit 34 contained 16 pills, for a total of 3,792 total pills (See Caid Decl., Ex. F).

For each of the three exhibits, the lab performed a random sampling and statistical analysis as follows.  First, the laboratory tested 9 pills selected at random from each exhibit.  The laboratory tested those pills and **determined that methamphetamine was in every pill**.  This allowed the laboratory to conclude that, "to at least a

95% level of confidence, that at least 70% of the units in the population contain" methamphetamine.  (Id.)  Then, the laboratory formed a composite from an additional 15 pills per exhibit, which was submitted for further testing as to purity.  (Id.)  This allowed the laboratory to conclude the substance purity for each exhibit, which was 4.3%, 4.6% and 4.7% methamphetamine respectively.  (Id.)  Thus, in total, across all three exhibits, the DEA laboratory confirmed that 27 of 27 tested pills contained methamphetamine, i.e., 100% of all tested pills contained methamphetamine, and an additional 45 pills were tested to provide insight as to substance purity --- which also contained methamphetamine.

This testing is more than sufficient to establish that defendant possessed over 1,700 grams of a mixture and substance containing methamphetamine.  For example, the Court in Dinh approved nearly identical procedures.  920 F.3d at 313.  In that case, law enforcement seized three batches of fentanyl pills from defendant, totaling 2,498 pills that weighed 838.9 grams.  Id. at 310-11.  Like in this case, the crime labs in Dinh tested a few pills from each batch and then provided statistical ranges.  The Dinh labs tested 28 or 29 pills from each batch and detected fentanyl in every pill tested.  Id.  The lab reports concluded that there was a 95% level of confidence that at least 90% of all pills contained fentanyl analogues.  Id.  On appeal, the Court affirmed that the relevant drug quantity was the net weight of all the pills submitted for testing.

Id. at 314.[2] When confronted with similar facts, other courts have reached the same result.[3]

This Court should also find that the testing done in this case for three different samples of pills found at defendant's house, all of which were identical in appearance, supports that all 3,792 pills contained methamphetamine.

**II. The Court Should Reject Defendant's Attempt to Minimize the Harm She Caused**

As set forth above, defendant's sentencing position largely ignores the aggravating circumstances of this case. For example, defendant harmed two overdose victims, but her sentencing briefing does not even mention Cody McLaury and only references Matthew Perry in passing, in the context of defendant attempting to downplay her role in his death and to heap the blame on others. (Dkt. 130 at 15.) Defendant's lack of demonstrated remorse is itself an aggravating factor. See, e.g., United States v. Vahedi, 628 F. App'x 471 (9th

---

[2] In fact, the Court in Dinh found that the first part of the labs' procedure --- the random sampling of the few pills that showed that "100% of the pills that were tested fentanyl analogues" was, on its own --- sufficient to establish that all of the pills contained fentanyl. Id. at 313. That the labs went further and took the second step to provide statistical certainty ranges only bolstered the conclusion that "100% of the pills contained fentanyl analogues." Id.

[3] See United States v. McCutchen, 992 F.2d 22, 26 (3d Cir. 1993) (sample testing of vials of cocaine base sufficient to extrapolate as to untested vials, especially when their contents were similar in appearance); United States v. Fitzgerald, 89 F.3d 218, 223 (5th Cir. 1996); United States v. Tran, 519 F.3d 98, 106-7 (2d Cir. 2008) (testing sample of thousands of pills seized sufficient to establish drug quantity); United States v. Maceo, 873 F.2d 1, 7 (1st Cir. 1989) (drug quantity based on DEA chemist testing sample); United States v. Hunt, No. 3:18-CR-00475-IM, 2022 WL 17733678, at *3 (D. Or. Dec. 16, 2022) (holding "a rational trier of fact … could reasonably infer that additional pills attributable to Defendant contained the same substance as the tested samples").

Cir. Oct. 6, 2015) (unpublished) (affirming upward departure for an 18 year sentence because defendant inflicted "life-destroying harm" and showed "lack of remorse").

Defendant expressed a similar lack of remorse in recorded jail communications --- including a call with one of the individuals who submitted a letter in support of her sentencing position --- about obtaining "trademarks" and securing book rights based on the events of the case. (See Cai Decl., Ex. G [Excerpt of December 25, 2024 Recorded Jail Call] (after an individual stated "We're gonna sell those book rights," defendant responded, "Oh I know, the plan is in, the fucking trademark is going down.")  Even if said in jest, this conversation suggests defendant does not appreciate the severity of her offenses, and instead sees her crimes as a potential future revenue stream.  It also shows that time in custody has, thus far, failed in getting defendant to adequately reflect upon the grave harms she has caused.